SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
JAMES C. SHAH
NATALIE FINKELMAN BENNETT
475 White Horse Pike
Collingswood, NJ  08107
Telephone: 856/858-1770
Facsimile: 856/858-7012
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

Additional Counsel on Signature Page

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| BK TRUCKING CO., | **Civil Action No**: |
| Plaintiff, | **DEMAND FOR JURY TRIAL** |
| vs. | |
| CATERPILLAR INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff, BK Trucking Co. ("Plaintiff" or "BK"), brings this action against Defendant,

Caterpillar Inc. ("Defendant" or "Caterpillar"), by and through its attorneys, individually and on

behalf of all others similarly situated, and alleges as follows:

## INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiff on behalf of itself and a New

Jersey class of current and former owners and lessees of trucks and other heavy duty vehicles

containing defective emissions and regeneration systems in their purchased and leased

Caterpillar C 13 and C 15 Advanced Combustion Emission Reduction Technology ("ACERT")

diesel engines (the "Engines").  The Engines were produced by Caterpillar for the model years

2007 through 2011.

       2.     This action arises from Defendant's failure, despite longstanding knowledge, to

disclose to Plaintiff and other consumers that the emissions and regeneration systems of the

Engines are defective and predisposed to constant failure (the "Emissions and Regeneration

System Defect" or "Defect").  Caterpillar actively concealed the Defect and that the existence of

the Defect would diminish the intrinsic and resale value of the vehicles.

       3.     The Defendant has been aware for several years of the true nature and cause of

the Emissions and Regeneration System Defect in the Engines.  In particular, Caterpillar

authorized dealers around the country have seen sharp increases in repair work since the

introduction of changes to the ACERT system beginning with the 2007 model year Engines.

Further, numerous complaints on the internet and elsewhere discuss the problem, including

accounts from Class members who have complained about this very issue to Defendant.

Notwithstanding its knowledge, Defendant has intentionally withheld from, and/or

misrepresented to Plaintiff and other purchasers of the Engines this material information.

Meanwhile, Defendant made numerous affirmative statements touting the high quality and

reliability of the Engines.

       4.     Most owners and lessees of vehicles containing the Engines have had to repair or

replace their emission and regeneration systems multiple times, thereby incurring costly repairs

and replacements.  Moreover, given the nature of the Engines, owners and lessees have incurred

significant costs associated with the towing of trucks and busses operating in various commercial endeavors.

5.      Additionally, the Defect causes the Engines to stop the vehicles containing the Engines from proceeding, forcing the truck or bus with the Engine to pull to the side of the road and be towed to a Caterpillar authorized repair shop.  This creates a serious safety concern to the drivers of the vehicles, the occupants of other vehicles, and the public.

6.      As a result of Defendant's unfair, deceptive and fraudulent business practices, as set forth herein, the Engines and the vehicles that house the Engines have a lower market value and are inherently worth less than they would be in the absence of the Defect.

7.      For customers with vehicles within the standard 100,000 mile warranty period for the emission and regeneration system, as discussed further below, Caterpillar has done no more than to temporarily repair the emission and regeneration system or to replace it with another equally defective and inherently failure-prone system, but has not remedied the Defect.  Further, Caterpillar has refused to take any action to correct this concealed Defect when it occurs in vehicles outside the warranty period.  Since the Emission and Regeneration System Defect surfaces well  within the warranty period for the Engines, and continues unabated after the expiration of the warranty, even where Caterpillar has replaced the system several times – and given Defendant's knowledge of this concealed Defect – any attempt by Caterpillar to limit its warranty with respect to the Defect is unconscionable here.

8.      As a result of Defendant's unfair, deceptive and/or fraudulent business practices, owners and/or lessees of Engines, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value.

9.      Plaintiff brings this action to redress Defendant's violations of the New Jersey New Jersey Consumer Fraud Act ("CFA") and seek recovery for Defendant's breach of express warranty, breach of implied warranty, and the covenant of good faith and fair dealing.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which Class members and Defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Plaintiff is located in this District and Defendant also transacts business in this District and is subject to personal jurisdiction in this District.  Additionally, Defendant has advertised in this District, has authorized repair and other facilities within this District, and has received substantial revenue and profits from the sales and/or leasing of class vehicles in this District; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred within this District.

12.      This Court has personal jurisdiction over Defendant.  Defendant intentionally and purposefully has placed vehicles with the Engines into the stream of commerce within New Jersey and throughout the United States.  As such, it has conducted substantial business in this judicial District.

## THE PARTIES

13.      BK is a New Jersey corporation with its principal place of business at 1000 Route 40, Newfield, New Jersey and therefore is a citizen and resident of New Jersey.

14.     Caterpillar is a Delaware corporation, with its principal place of business at 100 NE Adams Street, Peoria, Illinois, and therefore is a citizen of Delaware and Illinois.  Defendant engages in continuous and substantial business in New Jersey.

## FACTUAL ALLEGATIONS

### ACERT System

15.     Since 1931, Caterpillar has been a leader in diesel engine design and manufacturing.  According to its 2004 ACERT Technology Brochure ("Brochure"), Caterpillar pioneered many of the most important innovations in diesel technology, "because only Caterpillar has: THE POWER TO LEAD."

16.     The Engines are six-cylinder, in-line, heavy-duty engines used in fire engines, buses, trucks and heavy equipment.  They are electronically controlled as part of the ACERT system to meet federal pollution requirements.  Caterpillar touts the Engines as having a life of one million miles with recommended maintenance.

17.     In January 2003, Caterpillar Inc. announced it received certification by the United States Environmental Protection Agency ("EPA") for its first engine equipped with the ACERT technology.  Caterpillar engines were to use the technology as a long-term emissions solution for the North American trucking, bus, construction and mining industries, and to meet future EPA emission regulations for Caterpillar's entire diesel engine product line.

18.     According to Defendant, the core concept behind ACERT Technology was advanced combustion.  Defendant asserts in its marketing Brochure that ACERT carefully controls the combustion process to reduce pollutant levels while maintaining performance and efficiency.  Further, Defendant stated that ACERT was a technology that reduces emissions at

the point of combustion, using a combination of engine electronics, fuel injection and combustion techniques.

19.     The ACERT system controls most Engine functions with computer processors.

20.     This computer control also allows the Engine to sense possible problems and report them to the operator using 19 two-digit "flash" codes.

21.     For the 2007 model year, the EPA propounded new regulations for truck and bus engines, which were designed to further reduce hydrocarbon emissions.  To comply with these regulations, Caterpillar created and added to its ACERT System clean induction technology and a diesel particulate filter ("DPF").  Caterpillar marketed the DPF as a better alternative to the systems installed by other truck engine manufacturers to comply with the new EPA regulations, and touted that when the DPF's electronic control module detects soot buildup, the "Cat Regeneration System" ("CRS") activates, and that the CRS works automatically, with no driver action required.  The DPF and CRS are incorporated into the muffler and, according to Caterpillar, are supposed to require no maintenance or cleaning.

22.     Caterpillar's representations about the DPF and CRS proved to be wrong.  As the DPF became extremely hot, the heat put extreme and harmful pressure on other Engine components as well, including the turbos, resulting in regular and catastrophic failures of the Emissions and Regeneration System, and sometimes other Engine parts.

23.     Defendant also touted that the expected life of the after-treatment unit was equal to the life of the Engine itself.

24.     Upon information and belief, the design, modification, installation and decisions regarding the Engines within the Plaintiff's and Class members' vehicles were performed exclusively by Caterpillar.

25.    Defendant developed the owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for the vehicles.

26.    The Engines are covered by two different warranties. The standard warranty term for the Engines is the earlier to occur of twenty four months from the date of purchase or two hundred thousand miles. For the DPF and CRS system, though, the warranty expires after only one hundred thousand miles.

27.    Defendant exited the North American truck-engine market, just before the EPA's 2010 regulations were to take effect.

28.    Although many Engines are still in service and Defendant had promised to back them with the proper service, this has not happened. In fact, Defendant stopped sending representatives to meetings of the Technology & Maintenance Council of the American Trucking Association, so that its representatives have not been present to answer the numerous complaints about the Engines made through that group.

29.    In addition, authorized service centers are unable to obtain the necessary parts from Defendant, despite its warranty obligations, such that some authorized service centers are unable to service the Engines.

**Experiences of Plaintiff and the Class**

30.    Plaintiff has been a loyal Caterpillar customer, purchasing only Caterpillar engines for the last twenty years and believing them to be the highest quality engine available.

31.    Between 2007 and 2010, BK purchased 10 new trucks with C13 or C15 engines. These trucks include a 2008 Model Kenworth W900 (Truck #93), two 2008 Model Kenworth T800 (Truck #95, and Truck #96), two 2008 Peterbilt Model 389 (Truck #94, and Truck #98), a 2008 Peterbilt Model 388 (Truck #97), 2 2011 Kenworth Model T800B (Truck #102, and Truck

#103), and two 2011 Peterbilt Model 388 (Truck #104, and Truck #105).  The Kenworth trucks were all purchased at Liberty Kenworth of South Jersey, in Swedesboro, New Jersey.  The Peterbilt trucks were purchased at Hunter Jersey Peterbilt, in Pennsville, New Jersey.

32.    BK continues to own all of these vehicles.

33.    Each of these vehicles has had substantial, continuous, and identical problems with the ACERT system.  On each vehicle problems began shortly after the vehicle was purchased, usually within 25,000 miles, and well within the express warranty provisions.

34.    Plaintiff experienced numerous breakdowns of the Engines, specifically the emissions and regeneration systems.  To date, Plaintiff experiences the same problems every seven to eight weeks.  Despite bringing the Engines to the Caterpillar authorized repair facility within the express warranty provisions, the Engines in the vehicles experienced repeated instances of check engine lights, engine de-rating, after-treatment regeneration devices clogging, as well as other issues resulting from the Defect that prevent the Engines from working properly.  For instance, the Engines are not properly regenerating, which is a process that occurs within the Engine whereby soot built up within the Engine's diesel particulate filter is oxided.  When the Engine is not regenerating correctly, it often just shuts down.

35.    The problem with the ACERT systems is greatly exacerbated because it requires the truck's driver to pull over when the problem develops and the vehicle must be shut down.  Then, the truck must be towed to a Caterpillar authorized repair facility, because the computer codes and software are proprietary, and the trucking company's own mechanics, or other truck repair facilities, are unable to perform any repair or servicing to the ACERT system or the DPF.

36.    BK has suffered ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out of pocket loss

associated with multiple catastrophic Engine failures and attempted repairs to the Engine, and substantially lower resale values associated with the vehicles containing the Engines because the problems with the Engines are widely known and feared in the industry.

37.     Plaintiff has had a long term relationship with Caterpillar and received regular visits in New Jersey from Caterpillar authorized representatives.  Among other things, the representatives showed Plaintiff Caterpillar brochures and materials about the Engines and ACERT System, and encouraged Plaintiff to continue to purchase the Engines.

38.     However, neither Defendant nor any of its dealers or other representatives informed Plaintiff of Defendant's omissions and/or misrepresentations related to the Defect within the Engines.  To the contrary, Plaintiff was told by Defendant's representative that the problems would be rectified.

39.     Had Plaintiff been told of the Defect, it would not have purchased the Engines or would have paid less for them.

40.     Plaintiff's experiences mirror those of thousands of other owners and lessees of the Engines.  The Internet is replete with references to the common and profound problems that consumers have experienced with the Engines as a result of the Defect.  The problem with the Engines is both significant and widespread.

## TOLLING OF STATUTES OF LIMITATION

41.     Any applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein.  Plaintiff and members of the Class reasonably could not have discovered the true, defective nature of the Engines until shortly before this class action litigation was commenced.

42.     Defendant was and remains under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality and nature of the Engines, that this Defect is based on a poor design, and that it will require multiple and continuous costly repairs although there is no successful remedy.  As a result of the active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

### CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action on behalf of itself and all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

44.     The Class that Plaintiff seeks to represent is defined as follows:

All individuals in New Jersey who purchased, not for resale, trucks and other heavy duty vehicles containing defective emissions and regeneration systems in their model year 2007 through 2011 Caterpillar C 13 and C 15 Advanced Combustion Emission Reduction Technology diesel Engines.

Excluded from the Class are (a) Defendant, including any entity in which Defendant has a controlling interest, and its representatives, officers, directors, employees, assigns and successors; (b) any person who has suffered personal injury or is alleged to have suffered personal injury as a result of using the Engine; and (c) the Judge to whom this case is assigned.

45.     **Numerosity/Impracticability of Joinder:**  The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes, at a minimum, thousands of members.  The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody and control or otherwise obtained through reasonable means.

46.     **Commonality and Predominance:**  There are common questions of law and fact which predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, include, but are not limited to the following:

a.       whether Defendant engaged in a pattern of fraudulent, deceptive and
misleading conduct;

b.       whether Defendant's acts and omissions violated the CFA;

c.       whether Defendant made material misrepresentations of fact or omitted
stating material facts to Plaintiff and the Class regarding the Defect in its Engines;

d.       whether Defendant's false and misleading statements of fact and
concealment of material facts regarding the Defect in the Engines were intended
to deceive the public;

e.       whether Defendant breached express and implied warranties;

f.       whether, as a result of Defendant's misconduct, Plaintiff and the Class are
entitled to equitable relief and other relief, and, if so, the nature of such relief; and

g.       whether the members of the Class have sustained ascertainable loss and
damages as a result of Defendant's acts and omissions, and the proper measure
thereof.

47.     **Typicality:**  The representative Plaintiff's claims are typical of the claims of the
members of the Class it seeks to represent.  Plaintiff and members of the Class have been injured
by the same wrongful practices in which Defendant has engaged.  Plaintiff's claims arise from
the same practices and course of conduct that give rise to the claims of the members of the Class
and are based on the same legal theories.

48.     **Adequacy:**  Plaintiff is a representative who will fully and adequately assert and
protect the interests of the Class, and has retained class counsel who are experienced and
qualified in prosecuting class actions.  Neither Plaintiff nor its attorneys have any interests which
are contrary to or conflicting with the Class.

49.     **Superiority:**  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  In addition, Defendant has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

50.     Plaintiff will not have any difficulty in managing this litigation as a class action.

**COUNT I**
**VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT**
**(N.J.S.A. § 56:8-1, *et seq.*)**

51.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

52.     Plaintiff and Defendant are "persons" within the meaning of the New Jersey Consumer Fraud Act ("CFA").

53.     Plaintiff and the Class are "consumers" within the meaning of the CFA.

54.     At all relevant times material hereto, Defendant conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

55.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

56.     Defendant's practices violated the CFA for, *inter alia*, one or more of the following reasons:

      a.     Defendant concealed from Plaintiff and the Class the material facts that the Engines were defective and as such, the vehicles and Engines were not of merchantable quality; and

      b.     Defendant engaged in unconscionable commercial practices in failing to disclose material information discussed above about the Engines.

57.     Defendant consciously omitted to disclose material facts to Plaintiff and the Class with respect to the defective Engines.

58.     Defendant's unconscionable conduct described herein included the omission and concealment of material facts concerning the defective Engines as well as the affirmative misrepresentation that the Engines were engineered to run 1,000,000 miles.

59.     Defendant intended that Plaintiff and the Class rely on its acts of concealment and omissions and misrepresentations, so that Plaintiff and the Class would purchase and/or lease the Engines.

60.     Had Defendant disclosed all material information regarding the defective Engines to Plaintiff and the Class, they would not have purchased and/or leased the Engines or would have paid less.

61.     The foregoing acts, omissions and practices proximately caused Plaintiff and the Class to suffer an ascertainable loss in the form of, *inter alia*, added expense to continuously remove, repair and replace the defective Engines, diminution of value, loss of use of the Engines, towing and other expenses, and they are entitled to recover such damages together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(N.J. Stat. Ann. § 12A:2-313)**

62.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

63.     As an express warrantor and manufacturer and merchant, Defendant had certain obligations under N.J. Stat. Ann. § 12A:2-313 to conform the Engines to the express warranties.

64.     When Plaintiff and the members of the Class purchased and/or leased the vehicles with the Engines, Defendant expressly warranted under its warranty that it would repair defects in the Engines.  Caterpillar also expressly warranted that these Engines were engineered to run for 1,000,000 miles.

65.     The Defect at issue in this litigation was present at the time of sale and lease to Plaintiff and members of the Class.

66.     Defendant breached its express warranties (and continues to breach these express warranties) because it did not (and does not) cover the expenses associated with replacing the defective Engines in Plaintiff's and Class members' vehicles.  Defendant further breached these express warranties because the same defective Engines with the same ACERT system were placed in vehicles during purported repairs.

67.     Pursuant to the express warranties, Defendant was obligated to pay for or reimburse Plaintiff and the Class members for costs incurred in replacing the defective Engines.

- 14 -

68.     Pursuant to the express warranties, Defendant also was obligated to repair the Defect.

69.     Defendant and its agent dealers have failed and refused to conform the Engines to the express warranties and Defendant's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

70.     Plaintiff used the Engines in a manner consistent with their intended use and has performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

71.     Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

72.     In addition, Defendant has received, on information and belief, thousands of complaints and other notices from customers advising them of the Defect at issue in this litigation.

73.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendant to limit its express warranties in a manner that would exclude or limit coverage for the defective Engines that were present as of the time of sale or lease, which Defendant knew about prior to offering the Engines for sale, which Defendant concealed and did not disclose, and did not remedy prior to sale or lease (or afterward), is unconscionable, and any such effort to disclaim or otherwise limit liability for the Defect at issue is null and void.

74.     Accordingly, Plaintiff and the Class members suffered damages caused by Defendant's breach of the express warranties and are entitled to recover damages as set forth herein.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.J. Stat. Ann. § 12A:2-314)

75.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

76.     Defendant is and was at all relevant times a merchant with respect to the Engines.

77.     A warranty that the Engines were in merchantable quality and condition is implied by law pursuant to N.J. Stat. Ann. § 12A:2-314.

78.     Defendant impliedly warranted that the Engines were of good and merchantable condition and quality – fit and safe for their ordinary intended use.

79.     The Engines were defective at the time they left the possession of Defendant, as set forth above.  Defendant knew of this Defect at the time these transactions occurred.  Thus, the Engines, when sold and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

80.     By virtue of the conduct described herein and throughout this Complaint, Defendant breached the implied warranty of merchantability.

81.     Plaintiff and Class members have been damaged as a direct and proximate result of Defendant's breach of the implied warranty.

82.     Plaintiff has used the Engines in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct.

83.     Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

84.     In addition, Defendant has received, on information and belief, thousands of complaints and other notices from customers advising of the Defect associated with the Engines.

85.     Plaintiff has had sufficient dealings with either Defendant or its authorized dealers to establish privity of contract.  Notwithstanding this, privity is not required in this case because Plaintiff and the Class members are intended third-party beneficiaries of contracts between Caterpillar and its dealers; specifically, they are intended beneficiaries of Defendant's implied warranties.  The dealers were not intended to be the ultimate consumers of the Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to benefit the ultimate consumers only.

86.     As a direct and proximate result of Defendant's breach of warranties, Plaintiff and the Class were caused to suffer economic damage, including loss attributable to the diminished value of their Engines, loss of use, as well as the monies spent and to be spent to repair and/or replace their Engines.

## COUNT IV
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

87.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

88.     Plaintiff and the Class entered into agreements to purchase Engines with Defendant, or otherwise were in contractual privity with Defendant as a result of the express warranties described herein.

89.     The contracts and warranties were subject to the implied covenant that Defendant would conduct business with Plaintiff and the Class in good faith and would deal fairly with them.

90.     Defendant breached those implied covenants by selling Plaintiff and the Class Engines with the Emissions and Regeneration System Defect, when it knew, or should have

known, that the contracts and/or warranties were unconscionable and by abusing its discretion in

the performance of the contract or by intentionally subjecting Plaintiff and the Class to a risk [the

Defect] beyond that which they would have contemplated at the time of purchase as well as by

exiting the market and failing to provide for proper parts and service of the Engines it sold.

91.     Defendant also breached the implied covenants by not placing terms in the

contracts and/or warranties that conspicuously stated to Plaintiff and the Class that the Engines

and ACERT systems were defective as described herein.

92.     As a direct and proximate result of Defendant's breach of its implied covenants,

Plaintiff and the Class have been damaged in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated:     April 2, 2013                              SHEPHERD, FINKELMAN, MILLER &
                                                      SHAH, LLP

                                                      s/ James C. Shah
                                                      _____
                                                      JAMES C. SHAH
                                                      NATALIE FINKELMAN BENNETT
                                                      475 White Horse Pike
                                                      Collingswood, NJ  08107
                                                      Tel: 856-858-1770
                                                      Fax: 856-858-7012
                                                      jshah@sfmslaw.com
                                                      nfinkelman@sfmslaw.com

                                                      SCOTT R. SHEPHERD
                                                      SHEPHERD, FINKELMAN, MILLER &
                                                      SHAH, LLP
                                                      35 E. State Street
                                                      Media, PA  19063
                                                      Tel.: 610-891-9880
                                                      Fax: 610-891-9883
                                                      sshepherd@sfmslaw.com

JOHN W. TRIMBLE
TRIMBLE & ARMANO
900 Route 168 Suites B1-B2
Turnersville, NJ 08012
Phone:  856-232-9500
Fax:  856-232-9698
john.trimble@trimbleandarmano.com

Attorneys for Plaintiff